2023-1229

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

WELL CELL GLOBAL LLC AND WELL CELL SUPPORT LLC,

Plaintiffs-Appellees

v.

SHAWN PAUL CALVIT, PATRICK DALE LELEAUX, M.D., INSULINIC LLC, INSULINIC OF LAFAYETTE LLC, INSULINIC OF HIALEAH LLC, INSULINIC OF HAWAII, LLC, INSULINIC OF GRETNA, LLC, AND INSULINIC OF HAMMOND, LLC,

Defendants-Appellants

Appeal from the United States District Court for the Southern District of Texas
in Civil Action No. 4:22-CV-03062,
Chief Judge Lee H. Rosenthal

**PRINCIPAL BRIEF OF DEFENDANTS-APPELLANTS SHAWN PAUL CALVIT, PATRICK DALE LELEAUX, M.D., INSULINIC LLC, INSULINIC OF LAFAYETTE LLC, INSULINIC OF HIALEAH LLC, AND INSULINIC OF HAWAII, LLC**

Winston O. Huff
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7508
Facsimile: (214) 855-7584
whuff@munsch.com

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, the undersigned counsel for Appellant hereby certifies that:

1.      The full names of every party or amicus represented by me are:

Shawn Paul Calvit

Insulinic of Lafayette LLC

Insulinic of Hialeah LLC

Insulinic of Hawaii LLC

2.      The names of the real parties in interest represented by me are:

Shawn Paul Calvit

Insulinic of Lafayette LLC

Insulinic of Hialeah LLC

Insulinic of Hawaii LLC

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: **None.**

4.      The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the trial court or are expected to appear in this court are as follows, representing Defendants, Shawn Paul Calvit ("Calvit"),

Insulinic of Lafayette LLC ("Lafayette"), Insulinic of Hialeah LLC ("Hialeah"), and Insulinic of Hawaii LLC ("Hawaii"):

**Munsch Hardt Kopf & Harr, P.C.**
**Winston Oliver Huff**

Dated: February 6, 2023

Respectfully Submitted,

Munsch Hardt Kopf & Harr, P.C.

By: */s/ Winston O. Huff*
    Winston O. Huff
    Munsch Hardt Kopf & Harr, P.C.
    500 N. Akard Street, Suite 3800
    Dallas, TX 75201
    Telephone: (214) 855-7508
    Facsimile: (214) 855-7584
    whuff@munsch.com

**ATTORNEYS FOR DEFENDANTS,**
**SHAWN PAUL CALVIT, INSULINIC**
**OF LAFAYETTE LLC, INSULINIC**
**OF HIALEAH LLC, AND**
**INSULINIC OF HAWAII LLC**

# TABLE OF CONTENTS

**PAGE(S)**

CERTIFICATE OF INTEREST ............................................................2

TABLE OF CONTENTS....................................................................4

TABLE OF AUTHORITIES ...............................................................6

STATEMENT OF RELATED CASES ................................................10

PRELIMINARY STATEMENT ........................................................10

JURISDICTIONAL STATEMENT ....................................................14

STATEMENT OF THE ISSUES........................................................17

STATEMENT OF THE CASE...........................................................18

     A.    Background of the '990 Patent..........................................18

     B.    Relationship between the Insulinic Clinics, Well Cell, and Diabetes Relief ...........................................................................19

     C.    The District Court Proceedings..........................................20

     D.    Well Cell's Motion For A Preliminary Injunction..............................22

     E.    The District Court's Order Granting The Preliminary Injunction. .....23

SUMMARY OF THE ARGUMENT ...................................................24

ARGUMENT ...............................................................................26

     A.    Standard of Review .........................................................26

     B.    The District Court Erred In Failing To Conduct a Proper Analysis of Likelihood Of Success Of Proving Infringement................................27

          1.    The District Court Failed To Analyze Any Particular Claim Of The Asserted Patent And Failed To Conduct Any Claim Construction Analysis..............................................28

2.    The District Court Failed to Perform Any Meaningful Infringement Analysis.................................................30

C.    Well Cell Is Not Likely To Succeed On The Merits Of Its Trade Secret Claims........................................................31

D.    The District Court Erred In Concluding That Defendants Had Failed To Raise A Substantial Question With Respect To The Validity Of The '990 Patent. ................................................................34

1.    The '990 Patent is Invalid Under 35 U.S.C. § 101. .................36

2.    Claim 19 of the 990 Patent is Directed to an Abstract Idea. ....37

3.    Claim 19 of the 990 Patent Does Not Contain an Inventive Concept. ..................................................................38

E.    The District Court Also Erred In Finding Irreparable Harm And That The Balance Of Hardships And The Public Interest Supported Entry Of A Preliminary Injunction. ................................................40

F.    Proper Balancing of Hardships and the Public Interest Weighs Against Entry of A Preliminary Injunction. ................................................43

CONCLUSION........................................................................49

CERTIFICATE OF COMPLIANCE......................................................50

CERTIFICATE OF SERVICE ..........................................................51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Andrx Pharm., Inc.*,
   452 F.3d 1331 (Fed. Cir. 2006) ........................................................48

*Alice v. CLS Bank*,
   573 U.S. 208 (2014)........................................................................40

*Amazon.com Inc. v. Barnesandnoble.com*,
   239 F.3d 1343 (Fed. Cir. 2001) ..........................................27, 29, 34

*Atari Games Corp. v. Nintendo of Am., Inc.*,
   897 F.2d 1572 (Fed. Cir. 1990) ........................................................42

*Automated Merch. Sys., Inc. v. Crane Co.*,
   357 F. App'x 301, 302 (Fed. Cir. 2009)...............................35, 42, 43

Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,
   489 U.S. 141, 155 (1989)..................................................................32

*CAE Integrated, L.L.C. v. Moov Techs., Inc.*,
   44 F.4th 257 (5th Cir. 2022) .............................................................31

*Califano v. Yamasaki*,
   442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979) ...................44

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*,
   908 F.2d 951 (Fed. Cir. 1990) ..........................................................43

*Conair Grp., Inc. v. Automatik Apparate Maschinenbau GMBH*,
   944 F.2d 862 (Fed. Cir. 1991) ..........................................................41

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
   952 F.2d 802 (4th Cir. 1991) ............................................................42

*Erico Int'l Corp. v. Vutec Corp.*,
   516 F.3d 1350 (Fed. Cir. 2008) ........................................................34

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) ...........................................37, 38, 39, 40

*FairWarning IP, LLC v. Iatric Sys.*,
    839 F.3d 1089 (Fed. Cir. 2016) .........................................................................39

*Graco, Inc. v. Binks Mfg. Co.*,
    60 F.3d 785 (Fed. Cir. 1995) .............................................................................29

*Helifix, Ltd. v. Blok-Lok, Ltd.*,
    208 F.3d 1339 (Fed. Cir. 2000) .........................................................................17

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995) ...........................................................................43

*Holland America Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) ........................................................................34, 46

*Ill. Tool Works, Inc. v. Grip-Pak, Inc.*,
    906 F.2d 679, 683 (Fed. Cir. 1990) ...............................................................44, 48

*Intel Corp. v. Commonwealth Sci. & Indus. Research Org.*,
    455 F.3d 1364 (Fed. Cir. 2006) .........................................................................17

*John Doe #1 v. Veneman*,
    380 F.3d 807 (5th Cir. 2004) .............................................................................44

*Joseph Paul Corp. v. Trademark Custom Homes, Inc.*,
    3:16-CV-1651-L, 2016 U.S. Dist. LEXIS 126206, 2016 WL 4944370 (N.D.
    TDef. Ex. Sept. 16, 2016) ..................................................................................46

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004) .........................................................................16

*Lund Indus., Inc. v. GO Indus., Inc.*,
    938 F.2d 1273 (Fed. Cir. 1991) .........................................................................29

*MicroStrategy, Inc. v. Bus. Objects, S.A.*,
    661 F. Supp. 2d 548 (E.D. Va. 2009) .................................................................48

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*,
    357 F.3d 1319 (Fed. Cir. 2004) .....................................................................27, 29

*Nutrition 21 v. United States*,
    930 F.2d 867, 872 (Fed. Cir. 1991) ...................................................................42

*O'Donnell v. Harris Cnty.*,
892 F.3d 147 (5th Cir. 2018) ...............................................................44

*Qingdao Taifa Grp. Co. v. United States*,
581 F.3d 1375 (Fed. Cir. 2009) ...........................................................27

*Ranbaxy Pharm. Inc. v. Apotex, Inc.*,
350 F.3d 1235 (Fed. Cir. 2003) .....................................................27, 30

*Shuffle Master, Inc. v. VendingData Corp.*,
163 F. App'x 864 (Fed. Cir. 2005) ......................................................30

*Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*,
74 F.3d 1216 (Fed. Cir. 1996) ......................................................28, 30

*Standard Havens v. Gencor Industries*,
897 F.2d. 511, 513 (Fed. Cir. 1990) ....................................................48

*Swint v. Chambers County Coinin'n*,
514 U.S. 35 (1995).................................................................................17

*Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d
1304 (Fed. Cir. 2018) ...........................................................................31

*U.S. Steel Corp. v. United Mine Workers of Am.*,
519 F.2d 1236 (5th Cir. 1975) .............................................................44

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
141 F.3d 1084 (Fed. Cir. 1998) ...........................................................28

*Water Techs. Corp. v. Calco, Ltd.*,
850 F.2d 660 (Fed. Cir. 1988) .............................................................31

*Wind Tower Trade Coal. v. United States*,
741 F.3d 89 (Fed. Cir. 2014) .........................................................26, 27

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7, 129 S. Ct. 365 (2008).........................................................33

**Statutes**

17 U.S.C. § 101 .............................................................................16, 35

18 U.S.C. § 1836 ...................................................................................16

28 U.S.C. § 1292(a)(1)............................................................16

35 U.S.C. § 1 ......................................................................16

1 Melvin F. Jager, Trade Secrets Law § 5.10 (2019) ..............................32

Lanham Act § 43(a) ...............................................................15

Lanham Act § 43(c) ...............................................................15

TEX. BUS. & COM. CODE § 16.103 ...............................................16

TEX. BUS. & COM. CODE § 17.46 ...............................................15

Texas Uniform Trade Secrets Act.................................................15

**Other Authorities**

Fed. R. App. P. 4(a)(1)...........................................................18

## STATEMENT OF RELATED CASES

(a)     No other appeal in or from the same civil action was previously filed before this or any other appellate court.

(b)     The title and number of any case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal are:

*Well Cell Global LLC and Well Cell Support LLC v. Shawn Paul Calvit, Insulinic of Lafayette LLC; Insulinic of Hialeah LLC; Insulinic of Hawaii LLC*, 4:22-cv-03062 (S.D. Tex., 2022).

## PRELIMINARY STATEMENT

The United States District Court for the Southern District of Texas' ("District Court") entry of a preliminary injunction was extraordinary in its failure to adhere to this Court's precedents establishing the requisite analysis needed to award such relief. The District Court committed multiple errors, any one of which requires reversal.

*First*, with respect to the likelihood of success, the District Court failed to conduct even the most rudimentary analysis to justify its finding of likelihood of infringement. The District Court does not even mention, let alone analyze, *any claim* of the '990 Patent in its Order granting the preliminary injunction. There is no claim construction or even a discussion of particular claim elements, much less any effort to explain on an element-by-element basis how there is a likelihood of infringement for any particular claim of the '990 Patent. This Court's precedents require much

more, even at the preliminary injunction stage, and reversal is thus mandated on this basis alone.  Even if the District Court conducted a claim construction analysis, the District Court further erred by not properly comparing the properly-construed claims to the Defendants' products and procedures.  Instead, the District Court seemingly concluded that Well Cell met its likelihood of success on the merits burden by showing that the Defendants had licensed access to its technology.  This perfunctory analysis support reversal of the preliminary injunction.

Moreover, the District Court's trade secret analysis is equally problematic and further evidences Well Cell's inability to show that it is likely to succeed on the merits of its trade secret claims. Well Cell has not established that it has protectable trade secrets. Well Cell admits that at least a portion of its trade secrets is disclosed in its patents. This alone would nullify any purported trade secret protection and destroys its value. Moreover, independent development and even intentional reverse engineering of a product or method cannot give rise to the right to assert trade secret misappropriation.

Finally, the owner of a trade secret must demonstrate that the trade secret "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." In other words, the owner of a trade secret must show it has value

because it is a secret. Well Cell made no such showing to the detriment of its likelihood of success on the merits arguments.

*Second*, even if the District Court had performed a minimally-adequate analysis, there would be no basis for finding Well Cell was likely to succeed on the merits. The claims of the U.S. Patent No. 10,533,990 ("the '990 Patent") are directed to an abstract idea of gathering and analyzing patient data information to enable a client or physician to make changes to a treatment regimen based on measured data, glucose level, insulin-sensitivity factor, and an individual's target blood glucose level. Independent claims 1 and 19 are not an improvement of the capabilities of a computer because they are merely directed to using a known computer processor as a tool to compile patient data, compare measured patient data against models of therapeutic information and adjust a treatment regimen based on a comparison of the patient data and models. In addition to being directed to an unpatentable, abstract idea, the '990 Patent's claims do not recite an inventive concept that provides "something more," either individually or as an ordered combination, to transform the claim to include patentable subject matter. The '990 Patent only contemplates using well-known, routine, and conventional hardware and software. The District Court, however, ignored this evidence—and inexplicably excused Well Cell from its failure to offer any competing evidence—in its implicit finding that the claims of the '990 Patent were indeed valid.

*Third*, the District Court's finding of irreparable harm and the balancing of the other factors was erroneous as well and cannot be sustained on appeal. The Preliminary Injunction entered by the District Court expressly prevents the Defendants from infringing on the '990 Patent or Well Cell's alleged "trade secrets." However, the scope of the injunction improperly extends to prevent the Defendants from performing other lawful activity, using public information, or other research to provide intravenous insulin treatments to diabetes patients and patients with metabolic disorders. Importantly, in addition to expressly prohibiting the Defendants from infringing on the '990 Patent or misappropriating any "trade secrets," the injunction also prohibits the Defendants from "practicing the microburst insulin infusion modality, or any other form of exogenous intravenous insulin infusion designed to treat diabetes or other metabolic disorders…"

The District Court's Preliminary Injunction did not serve to maintain the status quo but to radically alter it. Despite Well Cell not being able to fully articulate its trade secrets, Well Cell's evidence of irreparable harm was conclusory and lacked any expert or other sophisticated analysis of the market. The District Court nonetheless found irreparable harm—despite the lack of direct evidence of actual irreparable harm from the year-long period during which Insulinic Lafayette and Insulinic Hialeah had already been providing exogenous insulin infusion treatments in the market. This was clearly erroneous. Even if Well Cell could ultimately

prevail, there is no competent evidence in the record supporting the notion that its injury could not be remedied by damages. Indeed, Well Cell licensed its own proprietary processes and all intellectual property, including its purported trade secrets for $75.00 for each insulin infusion. The Court should not restrict Defendants from providing exogenous intravenous insulin treatments for diabetes and metabolic disorders by using a process that is unrelated to and untainted by the '990 Patent or Well Cell's purported trade secrets. Said another way, an injunction prohibiting the Defendants from infringing on the '990 Patent and misappropriating Well Cell's trade secrets is sufficient "to remedy the specific action which gives rise to the order," and therefore there is no need to prohibit all forms of intravenous treatment to protect Well Cell's proprietary rights. The balance of harms thus weighs strongly against entry of an injunction, and the public interest does not support preliminarily pulling a product off the market on such a scant record.

In sum, the District Court's Order granting a preliminary injunction cannot stand. Defendants respectfully request that this Court reverse the District Court's Order and vacate the preliminary injunction.

## JURISDICTIONAL STATEMENT

This is an appeal from a preliminary injunction entered by the United States District Court for the Southern District of Texas, enjoining Defendants from, *inter alia*, (1) practicing the therapy disclosed in U.S. Patent No. 10,533,990; (2) using

any of the knowledge, information, training, or materials taught, delivered, described, or otherwise imparted from Well Cell, in whole or in part, as part of any medical procedure, treatment, therapeutic modality, or otherwise; (3) practicing Well Cell's propriety method of insulin resensitization, the microburst insulin infusion modality, or any other form of exogenous intravenous insulin infusion designed to treat diabetes or other metabolic disorders; and (4) disclosing the plaintiffs' trade secrets (undefined as they are). (APPX0002).

In its First Amended Complaint, Well Cell alleges copyright infringement, contributory copyright infringement, patent infringement, violations of the Defend Trade Secrets Act, violations of the Texas Uniform Trade Secrets Act, unfair competition in violation of Texas Business and Commerce Code § 17.46 (DTPA), unfair competition in violation of Texas Common Law; unfair competition by misappropriation in violation of Texas Common Law; unjust enrichment in violation of Texas Common Law, breach of contract; trademark infringement, unfair competition and false designation of origin in violation of § 43(a) of the Lanham Act, trademark dilution in violation of § 43(c) of the Lanham Act and in violation of the Texas Anti-Dilution Statute, Tex. Bus. & Com. Code § 16.103, and common law trademark infringement under Texas Law. The District Court dismissed, *inter alia*, the copyright claims, the DTPA claims, the unjust enrichment claims against Calvit, LeLeaux, Insulinic Hialeah, and Insulinc Lafayette, and the trademark dilution

claims. (APPX1918-1919). The District Court had subject matter jurisdiction over this civil action (the "Texas Action") pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., the patent laws of the United States, 35 U.S.C. §§ 1 et seq., and the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, et seq. The District Court has concurrent jurisdiction over Well Cell's allegations that invoke Texas state law.

This Court has jurisdiction to determine this appeal pursuant to 28 U.S.C. § 1292(a)(1), in that the Defendants-Appellants appeal the District Court's granting of a preliminary injunction in favor of Well Cell Global LLC and Well Cell Support LLC (collectively "Well Cell"). *See Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004)(holding that Federal Circuit law governs jurisdictional issues concerning "injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different District Courts" and that "[u]nder Federal Circuit law, an injunction against continuing litigation in another forum is recognized as being immediately appealable under section 1292(a)(1).").

The District Court issued its Memorandum and Opinion Entering Findings of Fact and Conclusions of Law and Order of Preliminary Injunction on November 10, 2022. In addition to filing a notice of appeal of the District Court's order of preliminary injunction, the Defendants moved to stay the order pending resolution of that appeal. (APPX1787-1820). The Defendants also moved to dismiss the

complaint for lack of standing, lack of personal jurisdiction over two of the individual defendants, and for failure to state a claim. On January 12, 2023, the District Court denied the Motion to Stay and granted in part and denied in part, the Motion to Dismiss. (APPX1895-1919). This Court also has jurisdiction to rule over the issues raised in the Motion to Stay Preliminary Injunction Pending Appeal because it is intertwined with the issues associated with the preliminary injunction ruling. *See Intel Corp. v. Commonwealth Sci. & Indus. Research Org.*, 455 F.3d 1364, 1369 (Fed. Cir. 2006)(stating that the Court "has the power to exercise pendent appellate jurisdiction over other issues, particularly where they are 'inextricably intertwined with' or 'necessary to ensure meaningful review of' a properly appealed collateral order" (quoting *Swint v. Chambers County Coinin'n*, 514 U.S. 35, 51 (1995))); *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1345 (Fed. Cir. 2000) ("We exercise our discretion to invoke pendent appellate jurisdiction over the interlocutory grant of summary judgment because it is closely interrelated factually to the preliminary injunction). Defendants timely filed their notice of appeal on December 2, 2022 (APPX0024-0026), within 30 days of the Court's November 10, 2022 Order. Fed. R. App. P. 4(a)(1).

## STATEMENT OF THE ISSUES

1.   Whether the District Court erred in finding Well Cell is likely to succeed on the merits when the District Court failed to perform any claim

construction analysis, or even analyze infringement in relation to any particular claim in the patents.

2.      Whether the District Court erred in finding Well Cell likely to succeed on the merits when the District Court failed to perform any misappropriation of trade secrets analysis.

3.      Whether the District Court erred in concluding that Defendants did not raise a substantial challenge to the validity of the claims of the '595 and '990 Patents despite raising a validity challenge in its Motions to Dismiss ahead of the preliminary injunction hearing.

4.      Whether the District Court erred in finding irreparable harm, and that the balance of hardships and the public interest weighed in favor of entry of a preliminary injunction, where the preliminary injunction is overly broad and prohibits lawful, non-protected medical activities and where Well Cell provided no competent evidence that monetary damages are not a sufficient remedy.

## STATEMENT OF THE CASE

### A.      Background of the '990 Patent

Though Well Cell accused the Defendants of infringing the '595 and '990 Patents, the District Court determined that Well Cell failed to meet its burden to demonstrate a likelihood of success on the merits with respect to the '595 Patent. As such, this appeal only concerns the '990 Patent. The abstract of the '990 Patent states

that the purported invention is "[a]n individualized intravenous exogenous insulin-based therapy for infusing insulin intravenously to a subject or a patient to improve impaired hepatic glucose processing. The claims of the '990 Patent are directed to an abstract idea of gathering and analyzing patient data information to enable a client or physician to make changes to a treatment regimen based on measured data, glucose level, insulin-sensitivity factor, and an individual's target blood glucose level.

**B.    Relationship between the Insulinic Clinics, Well Cell, and Diabetes Relief**

In January 2015, Scott Hepford and Hunter Carr founded Diabetes Relief LLC ("Diabetes Relief"). Diabetes Relief is an active entity with the State of Texas and is not a party to this lawsuit. The '990 Patent was issued to Diabetes Relief on January 14, 2020.

Well Cell alleges that on July 24, 2020, Diabetes Relief and Well Cell entered into an Asset Purchase Agreement ("Asset Purchase Agreement") where Well Cell agreed to purchase all of Diabetes Relief's assets. (APPX0007).  However, Well Cell has not paid the purchase price in full, which was required before the assets would transfer from Diabetes Relief to Well Cell. (APPX0008). The District Court determined that Well Cell was not assigned legal title in the '595 or '990 Patents prior to filing suit to enforce the patents and concluded that Well Cell only had equitable title. (APPX1353-1354).

Both Insulinic Hialeah and Insulinic Lafayette entered into license agreements with Well Cell Support (the "License Agreements"). (APPX0053). Despite representing and warranting that Well Cell Support "owns the rights to license the use of names, products, intellectual property, procedures, technology[], patents, and other intellectual property" it did not, as legal title to the '595 and '990 Patents had not transferred. (APPX0010, APPX0013, APPX0175).

Still, the License Agreements purported to license Insulinic Lafayette and Insulinic Hialeah the right to operate using all of Well Cell's assets, which were specifically defined as the "names, products, intellectual property, procedures, technology (including programmed pumps, sets, software, programs, networks, etc.), patents and other intellectual property, and know-how." (APPX1350). The License Agreements were expected to remain valid for at least the life of the equipment purchased by Lafayette and Hialeah, which was generally represented in the Exhibits to the License Agreements as 240 hours of use per pump. *Id*., (APPX1766).

On September 7, 2022, Well Cell manufactured cause to terminate the License Agreements despite substantial life remaining on the pumps. (APPX0093-0095).

## C.    <u>The District Court Proceedings.</u>

On September 8, 2022, Plaintiff filed a Complaint and Request for Preliminary Injunctive Relief seeking a preliminary injunction preventing

Defendants from: (1) infringing upon the '595 and '990 Patents, (2) infringing upon its copyrights, registration numbers TX-8-452-464 and VAu 1-330-086, and (3) misappropriating its trade secrets until a trial on the merits ostensibly for Insulinic Lafayette's and Insulinic Hialeah's use of the pumps and procedures, during the period in which they were licensed. (APPX0009, APPX0171, APPX0279). After a 30-minute non-evidentiary hearing on September 13, 2022, the District Court determined that a "narrow" Temporary Restraining Order should be entered restricting the Defendants from using insulin infusion pumps, kits, and IV tubing infusion cassettes associated with the '595 and '990 Patents.

The parties were granted limited expedited discovery. After a two-day evidentiary hearing, the Court entered a preliminary injunction order which prohibits the Defendants from:

1. Practicing the therapy disclosed in U.S. Patent No. 10,533,990; United States District Court;

2. Using any of the knowledge, information, training, or materials taught, delivered, described, or otherwise imparted from Well Cell, in whole or in part, as part of any medical procedure, treatment, therapeutic modality, or otherwise;

3. Practicing Well Cell's propriety method of insulin resensitization, the microburst insulin infusion modality, or any other form of exogenous intravenous insulin infusion designed to treat diabetes or other metabolic disorders;

4. Disclosing the plaintiffs' trade secrets, including their confidential business contacts and their specialized medical training, including their training modules, videos, and handbooks, and methods of conducting their business for Well Cell's proprietary method of insulin

resensitization for the treatment of diabetes to any person or entity in the United States; and

5.    Representing, by any means whatsoever, that any products manufactured, distributed, advertised, offered or sold by the defendants are Well Cell's products or vice versa, and from otherwise acting in a way likely to cause confusion, mistake, or deception on the part of purchasers or consumers as to the origin or sponsorship of such products.

However, the District Court's Preliminary Injunction Order far exceeded the necessary scope as it prohibits the Defendants from doing more than infringing on the '990 Patent or contacting Well Cell's business contacts. Indeed, the scope of the current preliminary injunction prohibits the Defendants from performing "any other form of exogenous intravenous insulin infusion designed to treat diabetes or other metabolic disorders." (APPX0002). The District Court entered its expansive order despite the presentation of evidence at the hearing was that hospitals all over the world provided insulin infusion treatments without infringing on the '990 Patent. (APPX1626).

## D.    Well Cell's Motion For A Preliminary Injunction.

In Well Cell's Motion for a Preliminary Injunction, it argued, *inter alia*, that preliminary relief was warranted because it was threatened with imminent irreparable harm. (APPX0073). The only irreparable harm identified by Well Cell was that the continued infringement of its intellectual property risks doctor, patient, and consumer confusion and irreparable harm to its reputation and business goodwill. (APPX0072). The testimony on this allegation was limited to bald, self-

22

serving, and unsubstantiated claims by Scott Hepford—a principal of Well Cell, who possesses no medical background. Hepford alleged that "[Calvit] actually puts his patients' health at risk because he is not able to maintain their care, thus also putting us at risk of not being able to provide licenses to everyone." (APPX1501). The District Court wholesale adopted this testimony despite the fact that Hepford "repeatedly blurred the lines between the patent claims and other information provided or taught to Well Cell's licensees." (APPX0016). Importantly, Well Cell submitted *no* expert analysis on the issue of irreparable harm, and *no* evidence that any alleged harms would not be fully compensable by monetary damages.

**E.** **The District Court's Order Granting The Preliminary Injunction.**

On November 10, 2022, the District Court subsequently entered its Memorandum Opinion and Order providing the entire basis for its entry of the preliminary injunction. (*see generally* APPX0001-00023). The District Court's Order included six conclusions of law, yet, neither the Memorandum and Opinion nor the Order mentions, let alone analyzes, any specific claim of the '990 Patent (or the '595 Patent). (APPX0023). Instead, the Order only generally addresses: (1) Well Cell's standing to assert its claims, (APPX0023); (2) the general subject matter of Well Cell's purported invention, (*Id*.); (3) Well Cell's likelihood of success on the merits (focusing solely on the Abstract of the '990 Patent (*Id*.); (4) a brief analysis of irreparable harm (APPX0021-0022) and (5) perfunctory analysis of the balance

of equities and the public interest (APPX0022-0023). But even as to those topics, the District Court's "findings" consist of conclusory statements, often without explanation or citation to support in the record. For example, the Order includes findings such as: (1) "[a]lthough their brief in opposition to Well Cell's motion suggests that the defendants may ultimately challenge the validity of Well Cell's patents, the defendants stated at the preliminary injunction hearing that they do not, at this time, challenge the validity of the patents. " (APPX0015), and (2) "Calvit's minimal ability to differentiate the current therapy offered by the defendants does not effectively rebut the charge that the defendants are infringing the '990 Patent" (APPX0018).

As such, Defendants was forced to discontinue its use of insulin in the treatment of its diabetic patients. The District Court ultimately required Well Cell to post a paltry bond of $50,000 as security for the preliminary injunction. (APPX0037).

## SUMMARY OF THE ARGUMENT

*First*, the District Court committed reversible error by granting a preliminary injunction without conducting even the most basic and fundamental of analyses required by this Court's precedents for entry of such relief. Specifically, the District Court erred by finding a likelihood that Well Cell would prove infringement without performing any claim construction analysis at all, or even mentioning which claim

of the asserted patent was adjudged likely to be infringed. Indeed, the District Court's Order does not construe or even mention any claim limitation. This failure to conduct the requisite first step of any infringement analysis mandates reversal. Moreover, even if the District Court had conducted a claim construction analysis, the District Court still committed reversible error by not conducting an adequate infringement analysis including failing to compare the claims of the '990 Patent to any of the Defendants' products. Here, the Court resisted its infringement conclusions on the fact that the Defendants had previously licensed access to the '990 Patent.

*Second*, the District Court erred in failing to consider a key issue: whether the '990 Patent is indeed valid. Indeed, The District Court further erred by refusing to analyze and credit Defendants' arguments that raised substantial questions about the validity of the asserted patent, including that: (1) the '990 Patent is directed to an abstract idea, and (2) the '990 Patent is not directed to an improvement to a computer. The specter of invalidity should have dissuaded the District Court from granting the preliminary injunction.

*Third*, the District Court also erred in finding a likelihood of irreparable harm, and that the balance of hardships and public interest weighed in favor of a preliminary injunction. Any harm Well Cell conceivably might have been able to claim it would incur that could not be remedied by damages is belied by Well Cell's

conduct. The District Court abused its discretion in finding that an injunction was necessary to prevent future irreparable harm to Well Cell when Well Cell did not present *any* expert or other reliable evidence to establish that irreparable harm had occurred during the brief time in between when Defendants had a license from Well Cell Support and the date of the preliminary injunction hearing. Moreover, the District Court abused its discretion in finding the balance of hardships and public interest weighed in favor of disturbing the status quo by forcing the Defendants to essentially close its clinics that were actively treating diabetic patients.

The record below does not and cannot support entry of a preliminary injunction in this case. Reversal is the only appropriate result.

## ARGUMENT

### A. Standard of Review

The Federal Circuit reviews the denial of a preliminary injunction for abuse of discretion. *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014). "An abuse of discretion may be established under Federal Circuit law by showing that the court made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact-finding." *Id.* (citing *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1379 (Fed. Cir. 2009)) (internal quotations omitted). This Court applies de novo review where the lower court's decision is based on questions of law. *Id.* (citing *Nat'l Steel*

*Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004)).

**B.**   **The District Court Erred In Failing To Conduct a Proper Analysis of Likelihood Of Success Of Proving Infringement.**

The District Court's Order granting the preliminary injunction must be reversed, because the District Court failed to engage in any claim construction analysis, and failed to explain how the accused product could meet all of the elements of the asserted claims.

It is well-established that an infringement analysis is a two-step process in which (1) the claims must be construed, and (2) the properly-construed claims must be compared to the accused product to assess infringement. *See, e.g., Ranbaxy Pharm. Inc. v. Apotex, Inc.*, 350 F.3d 1235, 1239-40 (Fed. Cir. 2003) (explaining standard in context of assessing the likelihood of success and affirming denial of preliminary injunction). Although the District Court does not have to conduct a comprehensive and final claim construction at the preliminary injunction stage, claim construction remains the requisite first step to analyzing the likelihood of success of proving infringement. *Amazon.com Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (vacating preliminary injunction, noting that "[i]t is elementary in patent law that, in determining whether a patent is valid and, if valid, infringed, the first step is to determine the meaning and scope of each claim in suit." (citation omitted)); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1088 (Fed. Cir. 1998) (vacating preliminary injunction, noting that an infringement

analysis is the first step and "[c]laim construction begins, as it must, with the words of the claims"); *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1220 (Fed. Cir. 1996) (vacating a preliminary injunction and finding "[l]iklihood of success on infringement depends on the meaning of disputed claim terms supplied by the court"). Here, the District Court failed to conduct either step of the necessary two-step infringement analysis.

1. The District Court Failed To Analyze Any Particular Claim Of The Asserted Patent And Failed To Conduct Any Claim Construction Analysis.

The District Court erred by failing to conduct any analysis on a particular claim of the patent. Tellingly, no patent claim is even mentioned in the District Court's Order. (*see generally* APPX0003-0023.) The District Court's failure to perform any claim-level analysis to support its finding of likelihood of success on the merits is an error of law that requires reversal.

That this is just a "preliminary" ruling is unavailing: "Of course, whether performed at the preliminary injunction stage or some later stage in the course of a particular case, infringement and validity analyses must be performed on a claim-by-claim basis." *Amazon.com Inc.*, 239 F.3d at 1351; *see also Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 791 (Fed. Cir. 1995)(omission of a claim construction analysis from an opinion provides an independent basis for remand); *Lund Indus., Inc. v. GO Indus., Inc.*, 938 F.2d 1273, 1275-76 (Fed. Cir. 1991)(reversing District

Court's summary conclusion of infringement where District Court failed to perform a proper infringement analysis by comparing the accused device to the claim). Here, the District Court's Order does not even mention a particular claim, let alone analyze one. (*See* generally APPX0001-0023.)

To be sure, a District Court does not have to conduct a full *Markman* hearing at the preliminary injunction stage. Even so, a District Court has a duty to decide contested issues of claim construction in considering a preliminary injunction motion. *See, e.g., Ranbaxy Pharms., Inc.*, 350 F.3d at 1239-40 (requiring court to determine the scope and meaning of the asserted claims for preliminary injunction determinations); *Shuffle Master, Inc. v. VendingData Corp.*, 163 F. App'x 864, 868 (Fed. Cir. 2005) ("[A] District Court in a preliminary injunction proceeding has the duty to determine whether the movant is likely to prevail on the merits, and if that question turns on a contested issue of claim construction, the court must give the claim construction issue the attention necessary to determine the likelihood of success."); *Sofamor Danek Grp., Inc.*, 74 F.3d at 1220 (affirming denial of a preliminary injunction and finding when parties dispute the meaning of the claim, a court's determination of the likelihood of success on infringement "depends on the meaning of disputed claim terms supplied by the court").

This is not a case where no claim construction analysis was required, or where there was no dispute as to claim meaning. Indeed, Well Cell has wholly failed to

describe the scope of its inventions. Even Hepford, a named inventor, could not describe the scope of the '595 Patent, and nothing in the pleadings or expedited discovery ahead of the preliminary injunction made any attempt to demonstrate what claims in the patents were being infringed and how. Thus, claim construction was central to properly concluding whether Well Cell was likely to prevail on the merits of its infringement claim.

The District Court's failure to discuss or decide any claim construction issues mandates the vacatur of the preliminary injunction.

2.    The District Court Failed to Perform Any Meaningful Infringement Analysis

In addition to not performing any claim construction analysis, the District Court failed to conduct any meaningful patent infringement analysis.   Instead of an infringement analysis, the District Court concluded that the Defendants were likely infringing the '990 Patent because they had previous access to Well Cell's technology.   The District Court's reasoning for the flawed conclusions consists of little more than a conclusory assertion that Calvit's minimal ability to differentiate the current therapy offered by the Defendants does not effectively rebut the charge that the Defendants are infringing the '990 Patent and that the Defendants are likely infringing by practicing the therapy disclosed by the '990 Patent.

There is no basis for granting a preliminary injunction and pulling a medical treatment off the market—particularly when the only "evidence" in the record

offered by Well Cell's self-serving testimony. The District Court erroneously excused Well Cell's lack of any testing, expert analysis, or other contrary evidence on the issue, and took the extraordinary step of granting a preliminary injunction even though this evidence was readily available to Well Cell (and should have been provided to the Defendants if Well Cell had followed the District Court's patent rules). Even assuming there might be circumstances where exigencies could forgive the lack of scientific evidence, they are not presented here. The District Court's analysis here is insufficient as a matter of law and itself requires reversal.

**C.** **Well Cell Is Not Likely To Succeed On The Merits Of Its Trade Secret Claims**

The District Court erred in concluding that Well Cell is likely to succeed on the merits of its trade secret claims as they suffer from the same flawed analysis as its patent infringement claims. To show a violation of either the DTSA or TUTSA, a party must show that "(1) the trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304 (Fed. Cir. 2018); *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022). Here, there has been no showing that Well Cell has satisfied (or can satisfy) any of the above requirements.

First, Well Cell has not established that it still has protectable trade secrets. Important, Well Cell admits that at least a portion of its trade secrets is disclosed in its patents. (APPX0017)("Hepford testified that someone could perform the protocols and administer the appropriate doses of insulin to individual patients using only the information conveyed in the '990 Patent."). This alone would nullify any purported trade secret protection and destroys its value. *See, e.g., Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 670 (Fed. Cir. 1988).

Moreover, independent development and even intentional reverse engineering of a product or method cannot give rise to the right to assert trade secret misappropriation. *See, e.g., Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 155 (1989) ("The public at large remained free to discover and exploit the trade secret through reverse engineering of products in the public domain or by independent creation."); 1 Melvin F. Jager, Trade Secrets Law § 5.10 (2019) ("The right to reverse engineer or independently develop is embodied in the current summary of trade secrets law in the Restatement (Third) of Competition. Section 43 of that Restatement states clearly that: 'Independent discovery and analysis of publicly available products or information are not improper means of acquisition.'").

Finally, the owner of a trade secret must demonstrate that the trade secret "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another

person who can obtain economic value from the disclosure or use of the information." In other words, the owner of a trade secret must show it has value because it is a secret. Well Cell has made no such showing.

Further, there is no evidence that the Defendants were using any purported trade secrets owned by Well Cell. The only evidence to support Well Cell's flawed trade secret allegations here is a press release announcing the opening of the Hawaii clinic before Well Cell terminated the license agreements. Quite simply, this is not evidence that Well Cell's trade secrets were used. Hepford's speculative testimony about the potential use of "trade secret" information at the Insulinic clinics is not competent evidence because he lacks personal knowledge of what, if any, "knowledge, training, equipment, and processes" may or may not be in place or utilized at the Insulinic clinics. Armed with only this "evidence", the Court found that Well Cell's "knowledge, training, equipment, and processes" was the "trade secret" information being allegedly misused by the Defendants despite Well Cell's relevant pleadings, including its proposed findings and conclusions submitted after the evidentiary hearing, failing to identify, specify, or allege any specific trade secrets which are now being misused by the Defendants. (APPX1808)).

Finally, the District Court placed undue weight on Calvit's inability to sufficiently distinguish the Defendants' diabetes treatment processes from those purportedly used by Well Cell. Calvit is not a medical professional and does not

provide any treatments. (APPX1808,1850). His inability to discuss treatment particulars is unsurprising and it certainly is not evidence of infringement or misappropriation of trade secrets; thus it cannot show that Well Cell would likely succeed on the merits as it relates to its trade secrets claims. There is no evidence that the Defendants actually used or will use Well Cell's purported trade secrets. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365 (2008); *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985) (explaining that speculative injury is insufficient to prove irreparable harm). At best, all that Well Cell can show is that some of the Defendants previously had access to Well Cell's trade secrets which was proper under the parties' license agreement. (APPX0013). Moreover, there are additional ways the Defendants could practice their microburst insulin therapies, including those disclosed in U.S. Patent No. 7,682,351 and U.S. Patent Application Nos. 2014/0233261 and 2019/0343926. The Court's overly restrictive preliminary injunction order forecloses the Defendants' legitimate use of microburst technology or any other method to provide intravenous insulin treatment and is therefore flawed.

**D.** **The District Court Erred In Concluding That Defendants Had Failed To Raise A Substantial Question With Respect To The Validity Of The '990 Patent.**

Well Cell was also required to establish likelihood of success on the separate and distinct issue of the validity of the patent. As this Court has held, a substantial

question of invalidity at the preliminary injunction stage "requires less proof than the clear and convincing standard to show actual invalidity." *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008)(defendant need only "put forth a substantial question of invalidity to show that the claims at issue are vulnerable"); *see also Amazon.com, Inc. v. Barnesandnoble.com*, *Inc.*, 239 F.3d 1343, 1358-59 (Fed. Cir. 2001). Defendants met its burden, and the District Court erroneously found that Defendants had failed to raise a substantial question of invalidity.

Further, the District Court erred in not conducting a proper validity analysis of the '990 Patent. In its Order, the District Court noted that the Defendants stated at the preliminary injunction hearing that they do not, at this time, challenge the validity of the patents. (APPX0015). This is not correct and does not relieve Well Cell of its burden to establish a likelihood of success on the merits of the infringement claim. *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 301, 302 (Fed. Cir. 2009) ("Reversing an injunction when the district court did not address invalidity arguments presented by the defendants"). In the preliminary injunction hearing, Defendants focused on four arguments that they believed provided a threshold basis for denying the relief sought by Plaintiffs. However, Defendants never waived any defenses to the preliminary injunction and even requested explicitly for the Court to consider their other briefing. (APPX1802). This is not a waiver of their challenge to the validity of Well Cell's patents. The foregoing

notwithstanding, the '990 Patent is invalid because it is directed to an abstract idea and does not include any inventive step.

1.    The '990 Patent is Invalid Under 35 U.S.C. § 101.

The '990 Patent has twenty claims of which Claim 1 and Claim 19 are independent claims. Claim 1 is a method for, and Claim 19 is a system for, "individualized intravenous exogenous insulin-based therapy." (*See generally* APPX2037-2205). Claim 1 is directed to a method for individualized intravenous exogenous insulin-based treatment and is simply directed to using a computer to do what medical personnel have done for decades. For example, claim 1 requires the step of creating a subject profile for a subject, which includes (i) a subject history; (ii) subject physical reports including a subject weight; (iii) subject name; (iv) subject contact information; and (v) subject blood test results. This is akin to a client filling out a patient intake form at a medical office and a physical file at that office. Claim 1 further requires assessing the metabolic factors of the subject and storing the metabolic factors in the subject profile. This is akin to a medical professional reviewing the results of medical tests and using the same to determine metabolic factors. Still further, claim 1 requires the step of creating a care plan with a plurality of treatment sessions for the subject and a plan goal. Again, this step can be, and often is, performed by any capable medical professional or registered dietician. Well Cell concedes that the device or pump is provided to the licensee to make the

procedure faster and easier, but could be done "with a syringe and a stopwatch." (APPX1407). Well Cell further concedes "[i]f they were using other things that are out there in the world that's not related to what we are protecting, they could proceed." (APPX1430). As such, claim 1 is invalid.

2.    Claim 19 of the 990 Patent is Directed to an Abstract Idea.

The claims of the '990 Patent are drawn towards an abstract idea of a computerized process for pulling together and analyzing patient data information to enable a client or physician to make changes to a treatment regimen based on measured data, glucose level, insulin-sensitivity factor, and an individual's target blood glucose level, and therefore, are invalid. The focus of Claim 19 is not an improvement of the capabilities of a computer because it merely uses a computer processor as a tool to compile patient data and compare measured patient data against models of therapeutic information and thereby make changes to a treatment regimen. This fails *Alice* Step One.

Actions that "can be performed in the human mind, or by a human using a pen and paper" are found to be abstract and unpatentable. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (internal citation omitted). Claim 19 fits squarely in this category. Claim 19 initially requires an administrative processor connected to an administrative data storage that is connected to a network. This is akin to a human administrative processor having a

physical file, or filing cabinet, and a network of people to share information. Claim 19 includes a plurality of care plan templates, a plurality of therapeutic ranges of blood glucose levels, and a plurality of weight management protocols in the administrative data storage which could be stored in file folders and organized by a human. Claim 19 requires computer instructions in the administrative data storage configured to instruct the administrative processor to compare the test results and assess factors to models and schedules and determine a treatment regimen. This is akin to written instructions in a file instructing a human to compare patient data to reference material, recording information in the patient's care plan, and tracking implementation of the subject's care

plan. This easily fails *Alice* Step One.

      3.    <u>Claim 19 of the 990 Patent Does Not Contain an Inventive Concept.</u>

Further, the '990 Patent's claims do not recite an inventive concept that provides "something more," either individually or as an ordered combination, to transform the claim to include patentable subject matter. The '990 Patent only contemplates using well-known, routine, and conventional hardware and software. In *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, a patent holder sued for infringement of a patent that claimed "a method and system for limiting and controlling access to resources in a telecommunications system." *See generally Ericsson Inc.*, 955 F.3d 1317. The defendant's products "include[d] a security

system that can grant apps access to a subset of services on the phone, with the end user controlling the permissions granted to each app.'" *Id.* at 1320. This Court concluded that the method and system for receiving an access request and determining whether access should be granted were abstract ideas. *Id.* At 1326. This Court reasoned that "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Id.* at 1327 (citation omitted). Because the claims did not "recite an inventive concept sufficient to transform that idea into patent-eligible subject matter," failing step two, they were not patent eligible. *Id.* at 1331.

Here, Claim 19 does not include any specialized hardware or a new storage or processing technique and requires nothing more than storing reference material, storing a patient's measured factors, comparing the measured factors to the reference material, and populating a care plan template. The automation of Claim 19 using a computer is irrelevant—the "claims here do not propose a solution or overcome a problem 'specifically arising in the realm of computer [technology],'" and therefore are not "transform[ed] into a patent-eligible application." *FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016). Hepford testifies that Well Cell's modalities could be performed using a stopwatch and a syringe. (APPX1433). Clearly, this is the type of action that can be performed in the human mind, or by a

human using a pen and paper cautioned against by this Court. This lack of an inventive step anywhere renders the '990 Patent invalid.

In view of the foregoing, independent claims 1 and 19 of the '990 Patent are clearly directed to unpatentable subject matter under the *Alice v. CLS Bank*, 573 U.S. 208 (2014) standard making Well Cell's ability to show any likelihood of success on the merits impossible.

**E.**  **The District Court Also Erred In Finding Irreparable Harm And That The Balance Of Hardships And The Public Interest Supported Entry Of A Preliminary Injunction.**

The District Court also erroneously found that Well Cell met its burden with respect to establishing a likelihood of irreparable harm. (APPX0022). The District Court's findings of irreparable harm were largely premised on conclusory and speculative statements, rather than meaningful analysis or other real evidence, and cannot sustain the preliminary injunction. The District Court's irreparable harm findings cannot be sustained because there is nothing substantiating Well Cell's vague assertions of lost market share and customer goodwill. The District Court's findings on irreparable harm are: Hepford convincingly testified that the defendants' unlicensed use of Well Cell's modality risks irreparable harm to Well Cell and to the members of the public who seek medical treatment from the Insulinic clinics. (APPX0022). Yet, one will search the Order in vain for any explanation, reasoning, or justification for these bare-bones conclusions. That is insufficient. *See, e.g.,*

*Conair Grp., Inc. v. Automatik Apparate Maschinenbau GMBH*, 944 F.2d 862, 866-67 (Fed. Cir. 1991)(vacating district court's grant of a preliminary injunction because of insufficient factual findings).

The District Court also did not explain how the entry of an injunction was necessary to prevent future irreparable harm given that it performed no infringement analysis or obtained any expert testimony on the perceived harm to potential patients. In light of these facts, there was no basis to find a likelihood of irreparable harm justifying an injunction a year after a product entered the market.

As discussed above, Well Cell provided no reliable evidence to support its alleged irreparable harm from the Defendants purported infringement of the '990 Patent. Well Cell's motion does not identify any infringed claim nor does Well Cell identify how Defendants' products infringe the '990 Patent. Instead, the Well Cell Preliminary Injunction Motion simply offers the same threadbare, conclusory allegations found in its First Amended Complaint. Further, Well Cell made no showing that the Defendants are likely to harm any potential patients. Any potential harm is speculative at best which is simply insufficient to support a preliminary injunction finding. S*ee, e.g.*, *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812-13 (4th Cir. 1991) ("[T]he required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'")(citations omitted); *Automated Merch.*, 357 F. App'x at 301 (conclusory assertions and speculation are

not enough to find irreparable harm, otherwise preliminary injunctions would be granted "in every patent case where the patentee practices the invention"). Further, "a district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits," which is all Well Cell can muster. *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575 (Fed. Cir. 1990)(conclusory affidavits are not enough to find irreparable harm); *see also Nutrition 21 v. United States*, 930 F.2d 867, 872 (Fed. Cir. 1991)(finding that in order to find irreparable harm there must be "an adequate supporting record" with more than just attorney argument); *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 954 (Fed. Cir. 1990) (affirming denial of preliminary injunction and noting that Chrysler did not show irreparable harm when it failed to provide empirical evidence such as "surveys, interviews, or other material" in support of its claims).

Even if Well Cell were somehow able to attribute its alleged harm to the Defendants, any alleged injury to Well Cell is fully compensable by monetary damages. Well Cell has offered no proof that monetary damages would be inadequate. *See Automated Merch. Sys., Inc*, 357 F. App'x at 300-01 (to show irreparable harm, the plaintiff must demonstrate that continued alleged infringement cannot be compensated "via monetary damages"); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (finding that

"there is no *presumption* that money damages will be inadequate in connection with a motion for an injunction pendent lite" and "[t]he availability of damages is particularly significant when . . . the patentee can point to no specific interest that needs protection through interim equitable relief" (emphasis in original) (citation omitted));. Tellingly, Well Cell provided no evidence of infringement or harm to potential patients. All of this suggests that any harm to Well Cell is reparable, and does not support the District Court's finding of irreparable harm. For this additional reason, the district court erred in granting a preliminary injunction.

**F.** **Proper Balancing of Hardships and the Public Interest Weighs Against Entry of A Preliminary Injunction.**

The District Court further erred in concluding that the balance of hardships favored entry of an injunction. Instead, the balance of hardships similarly weighs against the issuance of a preliminary injunction. *See Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990)(noting "a court must remain free to deny a preliminary junction . . . when equity in the light of the factors so requires."). The hardship to Defendants outweighs any hardship to Well Cell because the preliminary injunction disrupted the status quo. "When crafting an injunction, district courts are guided by the Supreme Court's instruction that 'the scope of injunctive relief is dictated by the extent of the violation established.'" *O'Donnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)).  Moreover, the Court "must

narrowly tailor [the] injunction to remedy the specific action which gives rise to the order." *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). An injunction fails to be narrowly tailored when it is overbroad, meaning it exceeds the extent of the violation established. *See Id*. at 818-19. "The broadness of an injunction refers to the range of proscribed activity . . . [and] is a matter of substantive law." *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.19 (5th Cir. 1975).

The Preliminary Injunction entered by the Court expressly prevents the Defendants from infringing on the '990 Patent or Well Cell's alleged "trade secrets." (APPX0002). However, the scope of the injunction improperly extends to prevent the Defendants from performing other lawful activity, using public information, or other research to provide intravenous insulin treatments to diabetes patients and patients with metabolic disorders. Importantly, in addition to expressly prohibiting the Defendants from infringing on the '990 Patent or misappropriating any "trade secrets," the injunction also prohibits the Defendants from "practicing the microburst insulin infusion modality, or any other form of exogenous intravenous insulin infusion designed to treat diabetes or other metabolic disorders…" (APPX0002). The inclusion of "exogenous" in the injunction is not a meaningful limitation because exogenous simply means "external" and could apply to any form of diabetes treatment involving any type of pump or insulin not created by the body. Likewise, the evidence shows that treatments in the form of exogenous intravenous

insulin infusion designed to treat diabetes or other metabolic disorders are performed all around the world without infringing upon or misappropriating Well Cell's proprietary information. (APPX1626). Accordingly, this additional prohibition preventing the Defendants from performing "any form of exogenous intravenous insulin infusion" is not tailored to remedy the specific action which gives rise to the order and, instead, it is an additive prescription that improperly expands the injunction to prohibit otherwise lawful conduct.

Further, the scope of the current injunction which extends beyond the use of "Well Cell's technologies" poses the risk of causing substantial harm to the Defendants. Prohibiting the Defendants from providing "any form of exogenous intravenous insulin infusion" would likely cause the Defendants to lose most of their existing customer base. (APPX1811). Because the companies are made up of few employees and their relatively small customer base the Defendants are unlikely to survive if the Court continues to enjoin "any form of exogenous intravenous insulin infusion."

Balanced against this impact is an impact on Well Cell that is, at best, speculative. Hepford testified that "**if** Calvit does things that are illegal and improper and ultimately ends up getting in trouble for that . . . **and then** . . . point[s] his fingers back and say[s], but these guys, they were the ones that taught me all this stuff, **then** Well Cell is put at risk" (emphasis added). (APPX0022). However, "[s]peculative

injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (finding plaintiff failed to make a clear showing of irreparable harm when the only evidence presented was a single affidavit of plaintiff's agent who speculated multiple lawsuits could be filed and cause plaintiff irreparable harm). While Well Cell argues, and the Court blanketly accepted, that "continued infringement of its intellectual property risks doctor, patient, and consumer confusion and irreparable harm to its reputation and business goodwill." (APPX0021). However, the evidence shows that the treatment of every patient at one of the Defendants' clinics is overseen by a medical professional and there is no substantiated risk to any doctor or patient who may be provided an exogenous intravenous insulin infusion. (APPX1811). In sum, Well Cell has not presented any data on its alleged loss of goodwill, reputation, risks to doctors or patients, or consumer confusion.

Conversely, the detrimental impact on the Defendants' business is concrete. Indeed, given the lack of clarity in the Court's injunction, the Defendants will go out of business and suffer hundreds of thousands of damages, (APPX1812) because the clinics are not allowed to practice ***any method*** of insulin infusion treatment and face the risk of losing all of their customers. Accordingly, prohibiting the Defendants from providing exogenous infusion insulin treatments during the pendency of the appeal would likely cause the Defendants to lose most of their existing customer

base. Defendants' business is unlikely to survive the appeal if the Court enjoins them from performing "any form of exogenous intravenous insulin infusion." Accordingly, the great harm to the Defendants is sufficient to warrant staying the injunction pending the appeal. *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 661 F. Supp. 2d 548, 558 (E.D. Va. 2009); *see*, e.g., *Standard Havens v. Gencor Industries*, 897 F.2d. 511, 513 (Fed. Cir. 1990)("When harm to the applicant is great enough, a court will not require a strong showing that applicant is likely to succeed on the merits.").

Still further, the District Court also erred in concluding that granting a preliminary injunction here would be in the public interest. In so doing, the District Court reached a brief conclusion of law and made no factual findings on the issue of public interest. (APPX0022-0023). The public has an interest in having access to a competitive diabetes treatment product so that consumers can choose the most effective treatment for their needs. *See Ill. Tool Works, Inc.*, 906 F.2d at 684 (finding that there was no error in the District Court's approach that the defendant's right to compete weighed the public interest factor in its favor). This is especially true here, where Well Cell cannot show a likelihood of success on the merits. *Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006)(vacating a preliminary injunction and noting the public was best served by allowing both products to continue on the market as no strong likelihood of success was demonstrated).

Allowing medical clinics to continue treating patients with diabetes is in the public interest. Allowing physicians, nurse practitioners, and nurses the leeway to use the most appropriate medical treatment for their patients—even if it requires the use of an unpatented pump—is in the public interest. Staying the implementation of an order that could have devastating consequences on patients, the careers of medical professionals, and the ability of a medical clinic to survive pending the resolution of appellate issues all serve the public's interest.

Furthermore, while there is a strong public interest in vindicating intellectual property rights, those rights can be vindicated without the need for an injunction by awarding monetary damages that provide full relief to the property owner. Also, any other allegations that the stay will not protect public interest are purely speculative. Here, there are no legitimate concerns over public safety. There is no evidence that Defendants will cause serious and irreparable harm to diabetes patients who visit the infringing clinics nor is there any evidence that these patients will receive subpar and potentially life-threatening treatment from individuals who are not properly trained in administering Well Cell's proprietary medical technology. On the contrary, every patient who receives treatment from Defendants is cared for by a licensed medical professional.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's Order

and vacate the preliminary injunction against Defendants.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Winston O. Huff*
    Winston O. Huff
    Munsch Hardt Kopf & Harr, P.C.
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75201
    Telephone: (214) 855-7508
    Facsimile: (214) 855-7584
    whuff@munsch.com

**ATTORNEYS FOR DEFENDANTS, SHAWN PAUL CALVIT, INSULINIC OF LAFAYETTE LLC, INSULINIC OF HIALEAH LLC, AND INSULINIC OF HAWAII LLC**

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the body of this brief, beginning with the Preliminary Statement on page 10, and ending with the last line of the conclusion on page 49, including headings, footnotes, and quotations, contains 9,264 words, in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Winston O. Huff* _____

Winston O. Huff
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7508
Facsimile: (214) 855-7584
whuff@munsch.com

**ATTORNEYS FOR DEFENDANTS, SHAWN PAUL CALVIT, INSULINIC OF LAFAYETTE LLC, INSULINIC OF HIALEAH LLC, AND INSULINIC OF HAWAII LLC**

# CERTIFICATE OF SERVICE

This is to certify that on February 6, 2023, copies of the foregoing Brief of

Defendants-Appellants were served on counsel for Plaintiffs-Appellees Well Cell

Global LLC and Well Cell Support LLC via the Court's ECF system and via

electronic mail upon the following:

Lema Barazi
LLOYD & MOUSILLI, PLLC
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
litigation@lloydmousilli.com
lema@lloydmousilli.com

*/s/ Winston O. Huff*
Counsel for Defendants

4883-6350-3438v.9